UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TAMMY T.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

6:25-cv-6055-JJM

---

Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [9, 13].[2] The parties have consented to my jurisdiction [15]. Having reviewed their submissions [9 ,13, 14], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

The parties' familiarity with the 3,193-page administrative record [5] is presumed. On May 15, 2018, plaintiff filed an application for supplemental security income. Administrative Record [5] at 15. She complained of a neck injury, chronic pain, post-traumatic stress disorder ("PTSD"), anxiety, a learning disability, and borderline personality disorder. Id. at 81. Plaintiff's claim was initially denied. Id. at 88. After an administrative hearing and decision, plaintiff

---

1 In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

2 Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

appealed to this court, and the case was remanded by stipulation and order. Id. at 2035; *see* Tammy T. v Commissioner of Social Security, Case No. 6:21-cv-6264-EAW [10].

**A. The Hearing on Remand**

On May 13, 2024, Administrative Law Judge ("ALJ") Asad Ba-Yunus conducted a new hearing. Id. at 1978. Plaintiff was represented by an attorney. Id. at 1981. At the hearing, plaintiff re-affirmed her previous testimony that she suffered from chronic neck pain which affected her ability to turn her head quickly, look up, or to bend down. Id. at 1994. The pain radiated into her right arm, which would sometimes cause her fingers to go numb for hours. Id. Plaintiff was also in therapy for depression, anxiety, PTSD, borderline personality disorder, anorexia, and insomnia - some of which stemmed from her traumatic childhood and having been the victim of domestic violence. Id. at 1994-95. She was on various medications and participated in group therapy sessions three days per week. Id. at 2000-01.

A vocational expert testified that an individual of plaintiff's age, education, and vocational background who was limited to performing light work with occasionally stooping, kneeling, crouching, or crawling; as well as simple tasks; occasional interaction with others and occasional changes to routine work setting; and no more than "occasional" exposure to workplace hazards could perform certain jobs existing in the national economy. Id. at 2005. However, the vocational expert testified that if such person could only occasionally look down, look up, or turn her head from side to side, there would be no jobs in the national economy that she could perform. Id. at 2014. He also testified that employers would typically tolerate between six to ten unscheduled absences per year. Id. at 2019.

## B. The ALJ's Decision

On October 1, 2024, ALJ Ba-Yunus issued a decision denying plaintiff's claim. Id. at 1952-67. He found that plaintiff had the following severe impairments: cervical radiculopathy; hepatomegaly; generalized anxiety disorder; borderline personality disorder; PTSD; and alcohol dependence. Id. at 1955. He found that plaintiff had "moderate" limitations in all four broad areas of mental functioning, based largely on a 2018 evaluation by consultative examiner Dr. Yu-Ying Lin, Ph.D. Id. at 1955-57; 362-68.[3]

ALJ Ba-Yunus found that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R §416.967(b), except that she could occasionally stoop, kneel, crouch, or crawl; perform simple tasks; tolerate occasional interaction with others and occasional changes to routine work setting; and would be restricted to only "occasional" exposure to workplace hazards. Id. at 1957.

ALJ Ba-Yunus determined that, considering plaintiff's age, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that she could perform. Id. at 1966. Accordingly, he concluded that she was not disabled. Id. at 1967.

## C. Medical Opinion Evidence

### 1. Neck/Cervical Spine

On July 24, 2018, plaintiff underwent a consultative examination with Despina Isihos, D.O. Id. at 359-62. Plaintiff reported whiplash/neck pain from a motor vehicle accident 20 years prior. Id. at 359. She reported difficulty rotating her neck. Id. She also complained of occasional numbness and tingling down her arms. Id. On examination, plaintiff appeared to be in

---

[3] On three separate occasions in 2024, the Commissioner scheduled consultative examinations in an attempt to procure a more current psychological examination, but plaintiff failed to report to any of them. [5] at 1959.

no acute distress and her neck was "supple" and unremarkable. Id. at 360. However, Dr. Isihos assessed plaintiff with significant range of motion restrictions in her cervical spine. Id. at 361. She concluded that plaintiff had a "moderate to marked" restriction with respect to repetitive rotatory movements of her neck, moderate restriction for pushing and pulling and repetitive overhead activities, and moderate to marked restriction for heavy lifting. Id. at 361.

ALJ Ba-Yunus found Dr. Isihos' opinion to be "partially persuasive". Id. at 1961. While he considered Dr. Isihos' opinion to be supported by her examination findings, he found her conclusion of "moderate" or "moderate-to-marked" restrictions to be vague as to plaintiff's specific vocational abilities. Id. He also found Dr. Isihos' opinion to be inconsistent with subsequent records that, in his view, demonstrated improvement of her symptoms, including that she had apparently sought no treatment for her cervical spine impairments since November 2021, and no treatment other than non-narcotic medication since January 2019. Id. at 1961, 1963.

Plaintiff's primary care providers Maysaa Hameed, M.D. and Molly Kennedy, N.P. provided multiple employability questionnaires, which opined that, among other things, plaintiff could only work 20 hours a week and would require an accommodation for a "severe limitation in range of motion of the neck". Id. at 2560-63; 2573-76, 255-88?; 20F at 3-5; 16-18, 28-30; 27F at 14-17. ALJ Ba-Yunus similarly found these opinions to be partially persuasive, again referencing the fact that plaintiff had sought no treatment for her cervical spine beyond November 2021, and concluding that such a severe restriction was not consistent with the evidence. Id. at 1963.

**2. Mental Health Limitations**

On July 24, 2018, plaintiff underwent a psychiatric consultative examination with

Dr. Lin. Tr. 363-68. On mental status exam, Dr. Lin assessed plaintiff as being fairly to slightly poorly groomed, with dysphoric affect, dysthymic mood, moderately impaired attention and concentration due to evaluation anxiety, mildly impaired memory skills due to evaluation nervousness, below average to average intellectual functioning, and fair insight and judgment. Id. at 365-66. Plaintiff could perform self-care and routine household tasks. Id. at 366. Dr. Lin opined that plaintiff was mildly to moderately limited in sustaining concentration and performing a task at a consistent pace; moderately limited in regulating emotions, controlling behavior, and maintaining well-being; but that her difficulties were caused by stress-related problems and did not appear to be significant enough to interfere with her ability to function on a daily basis. Id. at 366-67.

On February 14, 2020, plaintiff's treating mental health therapist Timothy Smallcomb, LMSW, completed a psychological assessment of employability form. Id. at 71-75. On it, he checked boxes indicating that plaintiff was moderately limited (defined as unable to function 10-25% of the time) in the capacity to follow, understand, and remember simple instructions and directions, perform simple and complex tasks independently, regularly attend to a routine and maintain a schedule, maintain basic standards of hygiene and grooming, and perform low stress and simple tasks. Id. at 73. She was "very limited" (unable to function 25% or more of the time) in her capacity to retain attention and concentration for role tasks. Id. He completed identical assessments on October 22, 2020, October 3, 2022, and February 15, 2024. Id. at 2580-84; 2597-2601; 3180-84.

On April 19, 2023, Mr. Smallcomb provided a more detailed opinion. Id. at 2862-66. He noted that he had been treating plaintiff biweekly since February 2017. Id. at 2862. He itemized various mental health "signs and symptoms". Id. at 2863. He indicated that plaintiff was

completely precluded from responding to changes in a routine work setting and traveling to unfamiliar places or using public transport. Id. at 2865. He further opined that plaintiff would be unable, for more than 20% of a workday, to remember work-like procedures; understand and remember detailed instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; work without interruption from psychologically based symptoms; perform at a consistent pace; accept instructions and respond appropriately to criticisms from supervisors; and set realistic goals or make plans independent of others. Id. at 2864-65. In other areas, plaintiff would be limited 11% to 20% of the day. Id. He further opined that plaintiff would be off-task more than 30% of the workday, and would miss more than four workdays per month. Id. at 2865-66.

ALJ Ba-Yunus found Mr. Smallcomb's opinions to be "partially persuasive", in that the nature of the limitations was generally consistent with the medical evidence, but that the degree of such restrictions assessed by Mr. Smallcomb was of "limited probative value". Id. at 1964. He questioned whether the categories of restriction employed by the forms were useful in vocational terms, as all categories except total preclusion could allow for "frequent" performance of an activity, which is defined as up to two-thirds or six hours of an eight-hour workday. Id. (*citing* SSR 83-10). He also noted a slight inconsistency between Mr. Smallcomb's recurring opinion that plaintiff was unable to retain attention and concentration for more than 25% of the time, and his April 2023 opinion that plaintiff could retain attention for two-hour segments except for 11% to 20% of the day. Id.

Moreover, ALJ Ba-Yunus found that the degree of Mr. Smallcomb's limitations was "not entirely supported" by his records, and was not consistent with other mental treatment records. Id. While acknowledging plaintiff's symptomology and participation in treatment, he

concluded that her primary complaints were caused by "significant situational stressors" such as her domestic situations and housing instability. Id. at 1965. He also found that plaintiff's mental status examination results, despite some abnormalities in mood and affect, were generally within normal limits. Id. Finally, he noted that plaintiff did not have any history of "significant inpatient treatment" nor supported residential requirements, and that she could tend to her own personal needs and daily tasks. Id.

**DISCUSSION**

Plaintiff argues that remand is required because ALJ Ba-Yunus: (1) failed to account for Dr. Isihos' opinion in his RFC determination; and (2) erred in evaluating Mr. Smallcomb's opinions. Plaintiff's Memorandum of Law ("MOL") [9-1] at 15-25.

**A. Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The

plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B. Did the ALJ properly account for the consultative examiner's opinion?**

Plaintiff argues that ALJ Ba-Yunus erred by failing to include limitations regarding neck movement in his RFC determination, despite Dr. Isihos' opinion that plaintiff had a "moderate to marked" limitation in "repetitive rotatory movements" of the neck. [9-1] at 15-18; [5] at 361. I disagree.

On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [his] determination is supported by substantial evidence". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). It is well-established that the ALJ, rather than any medical source, is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§404.1546(c), 404.1527(d)(2), 416.946(c), 416.927(d)(2); *see* Curry v. Commissioner of Social Security, 855 F. App'x 46, 48 (2d Cir. 2021). As such, the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision", and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022) (*quoting* Matta v. Astrue, 508 F. App'x. 53, 56 (2d Cir. 2013)).

Nonetheless, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted". Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *7. An unexplained omission of a medically supported limitation may require remand. *See, e.g.*, Jacob K. v. Commissioner of Social Security, 2021 WL 4324379, *4 (W.D.N.Y. 2021) ("[b]ecause the ALJ did not provide any reason for omitting the .

. . limitation, this Court has no idea whether the ALJ missed it, ignored it, or disagreed with it for some legitimate reason").

Here, ALJ Ba-Yunus acknowledged plaintiff's ongoing complaints of neck pain, but observed that the predicate injury predated the alleged onset date by nearly 20 years. Id. at 1960. During that time, plaintiff had sought employment. Id. ALJ Ba-Yunus also acknowledged that plaintiff had been assessed with significant limitations in her neck's range of motion by - not just Dr. Isihos - but by Dr. Hameed and N.P. Kennedy as well. Id. at 1961-62. However, he concluded that those assessments were inconsistent with plaintiff's conservative treatment history for such ailment, as well as clinical examination results "generally show[ing] no chronic musculoskeletal or clinical defects". Id. at 1961-63.

Such findings suffice to constitute substantial evidence in support of ALJ Ba-Yunus's decision to partially reject Dr. Isihos' medical opinion. *See*, *e.g.*, Lisa T. v. Commissioner of Social Security, 2023 WL 203363, *7 (W.D.N.Y. 2023) (the ALJ properly discounted a medical opinion based on a "conservative treatment regimen" and "mostly benign objective testing results"). Moreover, contrary to plaintiff's contention, ALJ Ba-Yunus did not "simply disregard" her neck limitations. [9-1] at 16. Rather, he determined that such limitations would be accommodated by a restriction to only occasional exposure to workplace hazards. [5] at 1965 ("[d]ue to limitations for moving her neck, the claimant is restricted to occasional exposure to workplace hazards").

As ALJ Ba-Yunus addressed the cervical spine limitations and explained his departure from the opinion evidence, the cases cited by plaintiff are distinguishable. *Cf.* Guzman v. Commissioner of Social Security, 2022 WL 2325908, *10 (S.D.N.Y. 2022) ("[the ALJ] does not address the portion of the opinion that states that Plaintiff cannot move his neck and does not

cite to any evidence that contradicts that portion of the opinion"); Burek v. Saul, 2020 WL 3401360, *3 (W.D.N.Y. 2020) ("the ALJ does not discuss in her decision Plaintiff's inability to turn her head or neck, and failed to incorporate any limitations related to Plaintiff's lack of ROM in her neck into the RFC determination"); Hogan v. Astrue, 491 F. Supp. 2d 347, 355 (W.D.N.Y. 2007) (remanding where the ALJ failed to address a medical opinion that claimant "should avoid job[s] require twisting of the neck and trunk").

The court is obligated to "defer to the [ALJ's] resolution of conflicting evidence" and reject his findings "only if a reasonable factfinder would have to conclude otherwise". Morris v. Berryhill, 721 F. App'x 25, 29 (2d Cir. 2018) (citations omitted). As ALJ Ba-Yunus's decision on this issue was grounded in substantial evidence, it must be upheld.

**C. Did ALJ err in evaluating plaintiff's mental health counselor's opinion?**

Plaintiff also argues that remand is required because ALJ Ba-Yunus erred in evaluating the opinions of her mental health counselor Mr. Smallcomb. [9-1] at 18-24. She contends that ALJ Ba-Yunus's discussion of the evaluation factors was incomplete and improperly based on a selective reading of the record. Id.

"As is now well-established, there is no longer a 'hierarchy of medical sources' in Social Security cases and 'the ALJ does not defer or give any specific evidentiary weight . . . to any medical opinion." Steven R. v. Commissioner of Social Security, 2025 WL 762195, *8 (E.D.N.Y. 2025) (*quoting* Colgan, 22 F.4th at 365); *see also* 20 C.F.R. §404.1520c(a). Rather, the ALJ will consider all medical opinion evidence and "articulate . . . how persuasive [he] find[s] all of the medical opinions". 20 C.F.R. §404.1520c(b).

In so doing, "the ALJ must explain how he considered the 'supportability' and 'consistency' factors", and "may—but is not required to" discuss other factors such as the

relationship with the claimant, specialization, or familiarity with program requirements. David C. v. Commissioner of Social Security, 2024 WL 376598, *4 (W.D.N.Y. 2024); *see* §404.1520c(b)-(c). "Supportability refers to the relevance of 'the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s)'; consistency refers to how 'consistent a medical opinion(s) . . . is with the evidence from other sources'." Villier on behalf of N.D.D.R. v. Commissioner of Social Security, 2024 WL 2174236, *2 (2d Cir. 2024) (*quoting* 20 C.F.R. §§404.1520c(c)(1), (2); 416.920c(c)(1), (2)). While those factors are technically separate, "[i]n practice, there is generally an overlap". Michael C. v. Commissioner of Social Security, 2022 WL 21852888, *10 (N.D.N.Y. 2022).

Here, ALJ Ba-Yunus explicitly addressed both factors. [5] at 1964-65. He found that the degree of mental limitations opined by Mr. Smallcomb were "not entirely supported" by his records nor "consistent with other mental treatment records". Id. at 1964. In reviewing plaintiff's therapy reports, he concluded that her primary complaints arose from significant "situational stressors" including an unstable domestic and housing situation. Id. at 1959, 1965. He reviewed her mental status examinations and concluded that, but for some "abnormalities" of mood and affect and somewhat impaired insight and judgment, they were "generally . . . within normal limits". Id. at 1965. He acknowledged plaintiff's significant treatment history, but found that the lack of more intensive treatment coupled with her ability to engage in activities of daily living were inconsistent with the assessed restrictions. Id.

As plaintiff argues, the ALJ may not "selectively rel[y] on portions of the record that show[] improvement". Loucks v. Kijakazi, 2022 WL 2189293, *2 (2d Cir. 2022). While the ALJ is empowered to resolve "[g]enuine conflicts in the medical evidence", Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002), remand is required when the ALJ "ignores or mischaracterizes

medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary". Regina M. v. Commissioner of Social Security, 2025 WL 899008, *3 (W.D.N.Y. 2025) (citing cases). However, "an ALJ is 'entitled to disregard favorable portions of medical opinions,' as long as [she] gives 'logical reasons to support her decision to do so'". Aponte v. Kijakazi, 692 F. Supp. 3d 257, 265-66 (S.D.N.Y. 2023).

ALJ Ba-Yunus' treatment of the record was not improperly selective. His decision makes plain that he thoroughly reviewed plaintiff's treatment records, acknowledged her ongoing mental health struggles and her significant level of treatment, but ultimately concluded that her limitations were not disabling. [5] at 1958-59. While the record contains a multitude of mental status examinations indicating, at various times and to various extents, some suboptimal findings (*see* 365, 394, 404, 410, 415, 418, 422, 649, 1062, 1592, 2612, *etc*.), I cannot say that ALJ Ba-Yunus' broad characterization of those findings as generally within normal limits is unreasonable. *See* Morris, 721 F. App'x at 29 (court is obligated to "defer to the [ALJ's] resolution of conflicting evidence" and reject his findings "only if a reasonable factfinder would have to conclude otherwise"). Nor can I agree with plaintiff that the ALJ's discussion of Mr. Smallcomb's opinion and treatment records, which comprises several paragraphs, is "conclusory". *Cf.* [9-1] at 21.

Having made such findings, it was not improper for ALJ Ba-Yunus to rely primarily on the opinion of a consultative examiner. *See* Trepanier v. Commissioner of Social Security, 752 F. App'x 75, 78 (2d Cir. 2018) (ALJ's finding was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner"). In that vein, I note that plaintiff declined to attend further scheduled consultative examinations. *See* [5] at 1959; *see also* Derek W. v. Commissioner of Social Security, 2022 WL 16856672, at *5 (W.D.N.Y.

2022) (the regulations "caution[ ] that failure to attend a consultative examination, absent good reason, may result in a finding of not disabled") (*quoting* 20 C.F.R. § 416.918). Moreover, contrary to plaintiff's contention, an ALJ may properly consider activities of daily living in formulating the RFC, at least in conjunction with other evidence, when those activities demonstrate an ability to perform certain tasks. *See* Rosa v. Commissioner of Social Security, 2022 WL 2274720, *10 (E.D.N.Y. 2022) (citing cases).

In sum, while there was evidence to support plaintiff's position, ALJ Ba-Yunus did not err by evaluating the evidence the way he did, nor by affixing appropriate limitations in accordance with his evaluation. *See* Whipple v. Astrue, 479 F. App'x 367, 370 (2d Cir. 2012) (consultative examiner's findings that plaintiff was only mildly and moderately impaired by his depression and anxiety supported the ALJ's conclusions that he was capable of performing work that involved simple tasks and allowed for a low-stress environment).

**CONCLUSION**

For these reasons, the Commissioner's motion for judgment on the pleadings [13] is granted, and plaintiff's motion [9] is denied.

**SO ORDERED**.

Dated: September 9, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge